An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-512

Filed 18 June 2025

Pitt County, Nos. 22CRS051777-730, 23CRS000190-730

STATE OF NORTH CAROLINA

       v.

JOHNNIE JAMES COREY, JR., Defendant.

Appeal by defendant from judgment entered 28 March 2023 by Judge Jeffery B. Foster in Superior Court, Pitt County. Heard in the Court of Appeals 13 February 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Tirrill Moore, for the State.*

> *Gilda C. Rodriguez for defendant-appellant.*

STROUD, Judge.

Defendant appeals from judgments entered following jury verdicts finding him guilty of habitual driving while impaired and having attained habitual felon status. Defendant contends the trial court committed plain error in admitting evidence of a digital scale with marijuana residue because it was irrelevant under Rule 401 since the State sought to prove he was impaired by alcohol, not marijuana. Because

Defendant was charged under North Carolina General Statute Section 20-138.1, which provides "two separate, independent and distinct ways" to commit the offense of driving while impaired, *State v. Coker*, 312 N.C. 432, 440, 323 S.E.2d 343, 349 (1984), either "under the influence of an impairing substance" or having "an alcohol concentration of 0.08 or more[,]" N.C. Gen. Stat. § 20-138.1(a) (2023), the evidence of the digital scale was relevant under Rule 401 and the trial court did not err by admitting this evidence.

## I.     Factual and Procedural History

On the evening of 31 March 2022, around 8:55 p.m., Officer Jordan Fuquay with the Winterville Police Department was operating a speed-check patrol. While sitting stationary in his vehicle and operating his speed radar, he saw "two vehicles traveling eastbound on Fire Tower [Road]. The first vehicle[,]" a Honda Accord, "caught [his] attention as it had a headlight out. [The Honda Accord] was also pulling away from the vehicle behind it which is an indication of speeding." Officer Fuquay estimated the Honda Accord to be traveling at 58 miles-per-hour in a 45 mile-per-hour zone, which he corroborated with his radar, "clocking it at 60 miles-an-hour[.]"

Officer Fuquay testified that he pulled out behind the Honda Accord, which was stopped at a red light, and ran the license plate. This search revealed that the vehicle was registered to Defendant; however, the registration had been revoked. Officer Fuquay initiated his blue lights and Defendant pulled the vehicle into a parking lot. Officer Fuquay testified that the car was "almost straddling the line"

between two parking spots. Officer Fuquay approached the car and "started speaking with" Defendant. Officer Fuquay "observed [Defendant's] eyes to be red and glassy." While speaking with Defendant, he "smelled a strong odor of alcoholic beverage coming from out of the car." Defendant explained "there had been alcohol in the car[ ]" because of his cousin "that he had just dropped off around the corner." Defendant claimed he had consumed no alcohol himself.

Officer Fuquay asked Defendant to exit the vehicle. Officer Fuquay testified Defendant "stumble[d] a little bit" as he stepped out of the vehicle. After being asked again whether he had anything to drink that night, Defendant admitted "he had a shot and two beers." While searching Defendant, Officer Fuquay detected a "strong" odor of alcohol "coming from his person and his breath as he was talking." Officer William Ellis arrived shortly after Officer Fuquay began speaking to Defendant.

Based on his observations and Defendant's admissions, Officer Fuquay began conducting a "Standardized Field Sobriety Test." This test had three separate assessments: a "horizontal gaze nystagmus test[;]" a "walk-and-turn test[;]" and a "one-leg stand" test. Officer Fuquay testified each test revealed positive clues as to Defendant's impairment. Officer Fuquay testified he had either conducted or participated in "approximately 55" field sobriety tests as of 31 March 2022.

Due to clues of Defendant's impairment from this field sobriety test, Officer Fuquay "asked [Defendant] to provide a preliminary breath sample[ ]" to measure Defendant's blood alcohol concentration ("BAC"). The first sample was obtained from

Defendant at 9:10 p.m. Officer Fuquay testified this first sample returned a positive result as to the presence of alcohol in Defendant's system.

Before obtaining a subsequent sample to verify the initial breathalyzer results, Officer Fuquay began searching Defendant's vehicle. In the driver's side door, Officer Fuquay observed "a black digital scale with marijuana residue[.]" Once Officer Fuquay completed his search, "[a]pproximately . . . six minutes" after obtaining the first breath sample, he returned to Defendant to obtain additional samples and verify the initial measurements of Defendant's BAC. The second and third breath sample returned a result of "insufficient[,]" meaning Defendant's breath "wasn't long or deep enough" for the breathalyzer to register. A fourth sample, however, verified the initial results as to the presence of alcohol in Defendant's system.

Officer Fuquay arrested Defendant upon his belief and opinion that Defendant "consumed a sufficient quantity of [an] impairing substance to where his mental and physical facilities were reasonably and appreciably impaired." After arrest, Defendant was transported to Ayden Police Department, which was the closest police department with an "intoxilyzer." Officer Fuquay testified he is a "certified chemical analyst[ ]" and holds "a permit issued by the North Carolina Department of Health and Human Services[ ]" to operate the intoxilyzer. Officer Fuquay obtained "two sequential breath samples" from Defendant, both returning a result of .11 BAC.

After being read his *Miranda* rights, Defendant further admitted to consuming alcohol between 7:30 and 8:00 p.m. that evening, about an hour before being pulled

over by Officer Fuquay. Defendant was indicted on 27 June 2022 for habitual impaired driving, and again on 13 February 2023 for obtaining habitual felon status. Defendant had previously been convicted three times for driving while impaired: one conviction on 4 September 2015; another on 3 February 2016; and a third conviction on 5 February 2018. Defendant's case came for trial on 27 March 2023 in Superior Court, Pitt County, before Judge Jeffery B. Foster. The jury returned a verdict of guilty to the charge of habitual driving while impaired, as well as the charge of having obtained habitual felon status. On 28 March 2023, the trial court entered judgments. Defendant entered oral notice of appeal to this Court on 28 March 2023.

## II. Analysis

On appeal, Defendant argues the trial court "committed plain error" when it allowed the State to present evidence as to the digital scale with "marijuana residue" obtained by Officer Fuquay when he searched Defendant's vehicle. Specifically, Defendant contends he was arrested "for driving while impaired and the impairing substance was alleged to be alcohol[,]" and any evidence of the scale and alleged marijuana residue was "irrelevant to the charge of driving while impaired[.]" We disagree.

## A. Standard of Review

At trial, Defendant did not object to the State's introduction of evidence regarding the digital scale. Without an objection at trial, this Court reviews only for plain error. *See* N.C. R. App. P. 10(a)(4) ("In criminal cases, an issue that was not

preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.").

Our Supreme Court recently

> reiterated the standard for plain error review, clarifying that for a defendant to succeed, three things must be shown:
>
>> First, the defendant must show that a fundamental error occurred at trial. Second, the defendant must show that the error had a probable impact on the outcome, meaning that absent the error, the jury probably would have returned a different verdict. Finally, the defendant must show that the error is an exceptional case that warrants plain error review, typically by showing that the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*State v. Gillard*, 386 N.C. 797, 820, 909 S.E.2d 226, 250-51 (2024) (citation and quotation marks omitted).

## B. Evidence of the Digital Scale

On appeal, Defendant contends "[t]he digital scale with the alleged contraband residue was not relevant to the State's case against [him]" as it "did not serve to prove any of the elements required for habitual impaired driving, especially since the State repeatedly alleged that the impairment . . . was caused by alcohol." Further, Defendant contends even if the digital scale "had any probative value, any such value

was substantially outweighed by the danger of unfair prejudice under Rule 403[ ]" of our North Carolina Rules of Evidence.

Since we are conducting plain error review, we will address only Defendant's argument regarding relevance under Rule 401 and we will not address his argument as to unfair prejudice under Rule 403. Our Supreme Court in *State v. Gillard* explained that "plain error review is unavailable for issues that fall within the realm of the trial court's discretion, such as Rule 403 determinations." *Id.* at 821, 909 S.E.2d at 251 (citations and quotation marks omitted). Our Supreme Court declined to address the defendant's plain error assignment pertaining to the trial court's discretionary determinations under Rule 403. *See id.* "However, because a trial court's rulings on relevanc[e] are technically not discretionary," the Court in *Gillard* did "review [the] defendant's challenge under Rule 401." *Id.* (citation and quotation marks omitted).

Similarly, here, we decline to address Defendant's argument that the admission of evidence of the digital scale was unfairly prejudicial amounting to plain error, as this determination was in the sound discretion of the trial judge and not subject to review. *See id.* However, we will analyze Defendant's argument as to the relevance of the evidence under Rule 401 and whether its admission amounted to plain error.

Defendant was charged with the offense of habitual impaired driving under North Carolina General Statute Section 20-138.5, because he "has been convicted of

three or more offenses involving impaired driving . . . within 10 years of the date of this offense." N.C. Gen. Stat. § 20-138.5(a) (2023). Under North Carolina General Statute Section 20-138.1,

> [a] person commits the offense of impaired driving if he drives any vehicle upon any highway, any street, or any public vehicular area within this State:
>
> > (1) While under the influence of an impairing substance; or
> >
> > (2) After having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.08 or more. The results of a chemical analysis shall be deemed sufficient evidence to prove a person's alcohol concentration[.]

N.C. Gen. Stat. § 20-138.1(a)(1)-(2).

As explained by our Supreme Court in *State v. Coker*, the two subsections of "under the influence" or having "an alcohol concentration of 0.08 or more[,]" *see id.*, are "separate, independent and distinct ways by which one can commit the single offense of driving while impaired." 312 N.C. at 440, 323 S.E.2d at 349 (emphasis omitted). "[T]here are two ways to prove the single offense of impaired driving: (1) showing appreciable impairment; *or* (2) showing an alcohol concentration of 0.08 or more." *State v. McDonald*, 151 N.C. App. 236, 244, 565 S.E.2d 273, 277 (2002) (emphasis added) (citations omitted). "Since [North Carolina General Statute Section] 20-138.1 describes one offense, the State need not allege under what theory it will proceed or what evidence it intends to produce to prove the offense." *Coker*,

312 N.C. at 440, 323 S.E.2d at 349 (citation omitted).

At trial, the State advanced arguments under both theories, presenting evidence supporting "appreciable impairment[,]" *McDonald*, 151 N.C. App. at 244, 565 S.E.2d at 277, as well as evidence of Defendant's BAC being over .08 percent. The jury was also instructed under both theories, so they could return a verdict of guilty if the State proved Defendant was driving the vehicle while "under the influence of an impairing substance" *or* that Defendant "consumed sufficient alcohol that at any relevant time . . . [he] had an alcohol concentration of .08 or more[.]"

Under the first theory of appreciable impairment, the main issue for the jury's consideration was whether Defendant consumed an "impairing substance" before driving the vehicle. An impairing substance is defined as "alcohol, [a] controlled substance under Chapter 90 . . . , any other drug or psychoactive substance capable of impairing a person's physical or mental facilities, or any combination of these substances." N.C. Gen. Stat. § 20-4.01(14a) (2023). Chapter 90 of our North Carolina General Statutes identifies marijuana as a Schedule VI controlled substance. *See* N.C. Gen. Stat. § 90-94(b) (2023).

Regarding Defendant's argument as to the relevance of the digital scale, Rule 401 of our North Carolina Rules of Evidence states that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2023). Here, evidence of the digital

scale with marijuana residue was relevant as "tend[ing] to make the existence" of Defendant consuming an impairing substance before driving the vehicle "more probable[.]" *See id.*

Defendant's argument as to relevance is based on his contention that his charge of impaired driving was premised solely on consumption of alcohol, but North Carolina General Statute Section 20-138.1 addresses "impaired driving" as grounds for guilt and it is not limited to alcohol. A driver may be impaired by substances other than alcohol or substances in addition to alcohol. Defendant's indictment specifically indicated he was being charged for "willfully and feloniously" driving a vehicle "while subject to an impairing substance." Because the State proceeded on grounds of appreciable impairment, evidence of Defendant's possession of a digital scale with marijuana residue is relevant under Rule 401. Defendant has failed to demonstrate that "a fundamental error occurred at trial[ ]" by the admission of this evidence so the trial court did not commit plain error by admitting this evidence. *Gillard*, 386 N.C. at 820, 909 S.E.2d at 250 (citation and quotation marks omitted).

Defendant also argues that even if evidence of the digital scale was relevant, its admission nevertheless amounted to plain error in that "the jury probably would have reached a different result[ ]" had it been excluded. But as we have determined that the evidence was relevant, and we cannot conduct plain error review of the trial court's discretionary determination under Rule 403, we need not address Defendant's remaining argument.

### III. Conclusion

Admission of evidence of the digital scale with marijuana residue was relevant as to Defendant's impaired driving under North Carolina General Statute Section 20-138.1 and the trial court did not err by admitting this evidence.

NO ERROR.

Judges ARROWOOD and FREEMAN concur.

Report per Rule 30(e).